ST. LOUIS NATIONAL LIFE INSURANCE COM-
.PANY, Respondent, v. INTERNATIONAL BANK
OF ST. LOUIS, Appellant.

St. Louis Court of Appeals, May 17, 1910.

1. REPLEVIN: Bills and. Notes: Recovery of Note Discounted:
Principal and Agent: Authority of Agent to Transfer Premium
Note: Life Insurance. An agent of plaintiff, an insurance com-
pany, took an application for life insurance and a note in which
he was named as payee for the first premium, and executed a
receipt for the note, containing an agreement that if the policy
was not issued in sixty days after examination by the insur-
ance company's physicians, the note would be returned on sur-
render of the receipt. The note was given on Saturday, and the
agent left it with plaintiff until Monday, when he called for it,
stating that he wished to negotiate it. He transferred it to de-
fendant, a bank, and received credit for the amount. Plaintiff
never accepted notes for premiums, and whenever an agent
took a note, he was charged with the premium, and if the com-
pany received the note, it only held it as collateral for the prem-
ium. Defendant bank, when it bought the note, knew it had
been given for an insurance premium. Owing to a change of
management in plaintiff insurance company before the issuance
of the policy, the risk was refused, and it then brought re-
plevin against the bank to recover the note. Held, that the
agent had the power to discount the note, and there being no
evidence of fraud on his part, replevin would not lie to re-
cover it.

2. ———: ———: ———: ———: ———: Instructions. In such
a case, where the court instructed the jury to return a verdict
for plaintiff if they found it was the owner of and entitled to
possession of the note at its date and found from the evidence
that defendant knew when it was discounted, or by ordinary
care could have known, that the agent had no authority to dis-
count it, or secondly, if the jury found defendant knew, or by
ordinary care could have known, that the note was the prop-
erty of plaintiff, and not that of the agent, or, thirdly, if the
jury found the note was received by the agent as agent, and
defendant knew, or by ordinary care could have known, he had
no authority to indorse and discount it, the second charge was
inconsistent with the third and all three were inconsistent with
the evidence.

Appeal from St. Louis City Circuit Court.—Hon.
Eugene McQuillin, Judge.

REVERSED.

*Harry W. Haeussler* and *Rassieur & Feuerbacher* for appellant.

(1)   The insurance company, not having issued a policy of insurance on the life of Edgar B. Woodward, had no such interest in the note herein sued for, as would entitle it to maintain replevin therefor.   If the International Bank of St. Louis was not the bona fide owner for value, then the Woodward & Tiernan Printing Co. is entitled to possession of the note, and not the insurance company.   Plaintiff in an action of replevin, cannot recover upon the weakness of defendant's title, but must prevail, if at all, upon the strength of its own title.   Bank v. Snyder, 85 Mo. App. 82; Kennedy v. Dodson, 44 Mo. App. 550; Moore v. Carr, 65 Mo. App. 64; Rhoades v. McNulty, 52 Mo. App. 301; Bank v. Water Power Co., 58 Mo. App. 532.   (2)   The receipt given by August Goerts to Edgar B. Woodward at the time of the execution and delivery of the note, should not have been admitted in evidence, as it was not shown that the International Bank of St. Louis, or the officers thereof, had any knowledge of such receipt or its contents at the time of the discounting of said note.   Hunter v. Johnson, 119 Mo. App. 487; Donovan v. Fox, 121 Mo. 236; Hamilton v. Marks, 63 Mo. 167.   (3)   The mere fact that the note was made payable to "August Goerts, Agent," did not impart notice to the bank that said August Goerts was not the real owner thereof, or that he did not have authority to endorse or discount the note.   Bryant v. Durkee, 9 Mo. 169; Agricultural Works v. Heisser, 51 Mo. 128; Thornton v. Rankin, 19 Mo. 193; Nickerson v. Gilliam, 29 Mo. 456; Powell v. Morrison, 35 Mo. 244; Mayer v. Bank, 86 Mo. App. 108; Fletcher v. Schaumberg, 41 Mo. 501; Eyerman v. Bank, 13 Mo. App. 289.   (4)   The rule that a purchaser of a note is not an innocent holder thereof if there are cir-

cumstances connected with the transfer of same, suffi-
cient to put an ordinarily prudent man on inquiry, is
not the prevailing law of this State; and to deprive the
bank of the status of an innocent holder for value, it
must be proven that the bank bought the note in bad
faith, with knowledge of the fact that Goerts was not
the rightful owner, or had no right to endorse or dis-
count same.   Merely proving facts such as would put
an ordinarily prudent party about to purchase a note,
upon inquiry, is not sufficient, nor is gross negligence.
Hamilton v. Marks, 63 Mo. 167; Bank v. Leeper, 121
Mo. App. 688; Wright Inv. Co. v. Realty Co., 178 Mo.
72; Bank v. Bank, 109 Mo. App. 665; Lee v. Turner,
89 Mo. 489; Mayes v. Robinson, 93 Mo. 114; Jennings
v. Todd, 118 Mo. 296; Bank v. Hammond, 104 Mo. App.
403; Inv. Co. v. Vette, 142 Mo. 560; Inv. Co. v. Filling-
ham, 85 Mo. App. 534.   (5)   The insurance company
required its agent, August Goerts, to return cash for the
first premium on policies issued by it, and would not ac-
cept notes in payment of such first premiums, and
should not now be heard to say that Goerts had no
authority to endorse a particular note, to the injury,
loss or damage of an innocent purchaser for value.

*A. A. Hunt* and *John O. Marshall* for respondent.

(1)   This court cannot consider the question as
to whether the court below erred in overruling the de-
murrer to the evidence, for the reason the evidence is
not set out in full and the defendant below introduced
further testimony in support of his defense.   Costello
v. Fesler, 80 Mo. App. 107; Smith v. Sanders, 70 Mo.
App. 221.   (2)   The question as to the inadmissibility
of evidence is waived by the failure of appellant to no-
tice them in his brief.   Nor were proper exceptions
saved thereto.   (3)   The burden of proof was on the
defendant to establish that it was a bona fide holder for
value before maturity, when plaintiff had first shown

that fraud entered into negotiations of the note. Johnson v. McMurry, 72 Mo. 278; Keim v. Vette, 167 Mo. 390; Henry v. Sneed, 99 Mo. 407; Hamilton v. Marks, 63 Mo. 167; Chapman v. Hoff, 129 Mo. 317. (4) The word "agent" was sufficient to put defendant upon inquiry, and in law amounted to actual notice of infirmities of the note. Ford v. Brown (Tenn.), 1 L. R. A. (N. S.) 188. (5) The word "agent" limited negotiability of the note to the extent of agent's authority to indorse. (6) The verdict of the trial court is supported by the evidence. (7) The answer does not bring defendant within the rule protecting innocent holders of commercial paper. There is no allegation therein that it was an innocent holder, nor that the note was taken in usual course without the knowledge of infirmities. Renshaw v. Wills, 38 Mo. 201.

GOODE, J.—Action of replevin to recover possession of a negotiable promissory note, dated September 5, 1908, due January 5, 1909, for the sum of $3506, payable to August Goerts, agent, and signed by the Woodward & Tiernan Printing Company. Said note is alleged to be of the value of its face, and plaintiff asks to recover it and one hundred dollars damages for its detention. Answer denied plaintiff was entitled to possession of the note at the filing of the petition or since, denied defendant ever wrongfully took the note from the possession of plaintiff or wrongfully detained it from plaintiff, and averred that long prior to the institution of the present action and before the maturity of the note, the payee endorsed, assigned and delivered it for a valuable consideration to defendant, whereby defendant became the owner. Plaintiff is engaged in the life insurance business in the city of St. Louis, and August Goerts, at the date of the note, was its agent and vice-president. He solicited risks, and in the course of that business induced Edward Woodward, president of the Woodward & Tiernan Printing Company, to take out a policy of

insurance. Woodward was a heavy man and classed as an "over-weight;" but plaintiff company insured that kind of risks. Goerts offered to sell Woodward a policy of the fifteen-years endowment variety, insuring him for $50,000. During the negotiation, not only Goerts, the vice-president of plaintiff company, but Starnes, its president, saw Mr. Woodward and agreed to issue the policy; in fact Woodward applied for a policy of $25,-000, but Starnes offered to write one for $50,000. Woodward submitted to an examination by physicians who acted for the company and was passed as a "first-class risk." Thereupon he executed the note in controversy for the first premium. Though the note was signed by the Woodward & Tiernan Printing Company, it was given for the accommodation of Edgar B. Woodward. On the same date Goerts executed a receipt to the Woodward & Tiernan Printing Company for the note, said receipt being also a contract which contained one term material to the present case, namely, if a policy was not issued to the applicant Woodward in sixty days after he had been examined by the company's physicians, the sum paid (i. e., the note) would be returned on surrender of the receipt to the company. That instrument was admitted in evidence at the trial of the present case over the objection and exception of defendant, on the score that it knew nothing of the receipt having been given. The note was negotiated probably on September 7, 1908, to defendant, a banking institution in the city of St. Louis, which credited Goerts as agent, with the proceeds on the books of the bank and he checked the credit out in the regular course of business. Before a policy was issued to Woodward, a change in the management of the directory of plaintiff company occurred, Starnes ceasing to be president and Goerts vice-president and agent, and thereafter, in November, 1908, the company refused in writing to issue the policy. Meanwhile Woodward had been demanding his note back or the policy, and the company's refusal was made to him

Afterward, on December 2, 1908, the present action was instituted to recover the note back from the bank. Other facts must be stated. The chief witness for plaintiff was Goerts, the payee of the note. He testified the insurance company refused to accept notes for premiums and whenever a soliciting agent took a note for the first premium, he was charged with the premium; that if the company received the note, it only held it as collateral for the debt, and the agent was charged with the amount. This was the uniform testimony on that issue. Agents were in the habit of taking notes for premiums and discounting them in banks, but the notes were regarded as the property of the agent and not of the insurance company, except as already stated, when occasionally the company held them as collateral until the obligation of the agent for the premium was paid in cash. Goerts had been accustomed to take premium notes, payable to him as agent, and to discount them with defendant and other banks. When defendant bought the note in controversy, it did not know what insurance company Goerts represented, but knew the note had been given for the premium on the insurance contract; and, in truth, inquired of Goerts about the origin of the note. Goerts had taken notes payable to him as agent, as the one in question was, and when he did not have "facilities for discounting them for several days, he gave them to the company, but did not receive credit for commission until the company had received the amount it had charged against him." When Goerts received the present note, he showed it to the officers of the insurance company, declaring he was proud of the application. The note was given on Saturday; we suppose, after banking hours. Anyhow, Goerts testified he could not discount it that day, and not wishing to carry it around with him, he left it with the officers until the next day (probably meaning Monday) telling them to take care of it for him. Afterwards he called for it, asking them "to give it to me to negotiate myself," as he testified.

They turned it over to him on his demand and he negotiated it with defendant. We find nothing in the record contradictory in any degree of the testimony of Goerts. The witnesses for defendant, among whom was the superintendent of agencies of plaintiff company, corroborated what Goerts said. The superintendent of agencies testified that if an agent brought in a note for a premium it would be simply an act of courtesy on the part of the company to accept and hold it until such time as the cash was paid for the premium; that the company looked to the agent for the net cash, did not accept notes as premiums, but only held them as collateral; that the company advised agents to handle their own paper and not to bring it into the office at all, and agents were not authorized to take a note payable to the company for the first premium. Such, in substance, are the material facts. In our opinion their only result is to defeat plaintiff's action. This case is governed less, perhaps, by the law merchant, than by the law of principal and agent. It is an ordinary action of replevin for a piece of personal property. If any wrong occurred in connection with the note, the wrong was the negotiation of the note by Goerts before the policy had been issued. We do not say he committed any wrong in that respect, because, as far as appears, the only reason the policy was not issued was a change in the management of the company, and in everything Goerts did about agreeing to take the risk he had the approval of the management in charge at the time. The risk had been passed as first-class, and there is nothing to show Goerts had reason to believe the policy would be refused. However, at the most, the insurance company, after declining to issue the policy, had a claim against Goerts for the proceeds of the note, as a receipt had been given by him, or an agreement in the form of a receipt, which declared the note would be returned to Woodward if the policy was not written. What is clear on the facts before us is, that Goerts had the power to discount this note—to ne-

gotiate it to defendant bank. Even granting the title
to it was in plaintiff, the uncontradicted evidence shows
plaintiff's officers, after it had been turned over to them
by Goerts for safe keeping, redelivered it to him on his
demand and did so in order to enable him to negotiate
it. That is, the officers of the company turned it back
to Goerts for the express purpose of  negotiating  it.
This being so, we can conceive of no contingency in
which the title of defendant could be defeated unless its
officers were aware of some fraudulent motive on the
part of Goerts. Suffice to say there is no proof he had
any fraudulent motive, nor a shadow of evidence tending
to prove defendant was in collusion with him or acted in
bad faith. Two sections (55, 56) of the Negotiable In-
strument Act bear on the infirmities in the title of hold-
ers of negotiable paper and notice of such infirmities.
[1 Mo. Ann. St., p. 530.] The first says a title of a per-
son who negotiates an instrument is defective when he
obtained the instrument or any signature by fraud,
duress, force and fear, or other unlawful means, or when
he negotiates it in breach of faith or under such circum-
stances as amount to a fraud. Only the latter clause
could apply to the negotiation of the note in dispute
by Goerts, and how can he be said to have breached
faith or committed a fraud, when he did with the note
what the officers of plaintiff intended he should do when
they redelivered it to him?

The case was submitted to the jury in the court be-
low on instructions which authorized them to return a
verdict for plaintiff if they found it was the owner of
and entitled to the possession of the note at its date,
and found from the evidence defendant knew when it
was discounted, or by ordinary care could have known,
August Goerts had no authority to discount  it;  or,
secondly, if the jury found defendant knew, or by or-
dinary care could have known, the note was the property
of plaintiff and not the property of Goerts; or, thirdly,
if the jury found the note was received by Goerts as

agent and defendant knew, or by ordinary care could have known, he had no authority to indorse and discount it. The second charge was inconsistent with the third and all three were inconsistent with the evidence in the case; for, as said, both by custom and, in the present case, by special conduct equivalent to express authority, Goerts was authorized to discount the note. As plaintiff's officers had accepted the risk and had turned the note over to Goerts to negotiate it, defendant could have learned nothing against Goerts' right to dispose of the paper by any degree of diligence in prosecuting inquiries.

The judgment is reversed. All concur.